ISIDORE GROSS ET AL. *v.* FRANK JONES.

[42 South. Rep., 802.]

1. TRUST. *Conveyance by trustee. Lunacy.*

A deed executed to a lunatic and his wife jointly by one who was under duty to convey the land to the lunatic alone, does not invest the wife with any title which she can assert against her husband.

2. APPEAL. *Chancellor's findings of fact. Conclusiveness.*

The supreme court will not disturb the findings of the chancellor on a disputed question of fact, unless they be manifestly incorrect.

3. ACCOUNTING. *Mutual dealings. Adjustment.*

Where parties, after mutual dealings for a number of years, had an adjustment of their accounts, and the one found to owe the other, executed his note for the sum agreed upon, the adjustment and agreed sum will be treated as correct in the absence of evidence showing illegality or fraud in the settlement.

4. SAME. *Insane persons. Mutual accounts. Settlement.*

A party, in a suit for an accounting covering a period during which he was sane and a subsequent period during which he was insane, is chargeable with any indebtedness contracted during the first period, together with the indebtedness which the law implies for necessaries furnished him during the period of his insanity.

5. SAME.

Where complainant, while insane, executed a mortgage to secure an indebtedness, and, the same having been assigned to defendant, afterwards, while sane, gave his note in renewal of the indebtedness, it is proper on an accounting between the parties to charge complainant with the debt.

FROM the chancery court of Madison county.

HON. ROBERT B. MAYES, Chancellor.

Jones, the appellee and cross-appellant, was complainant in the court below; Gross and others, the appellants and cross-appellees, were defendants there. From a decree largely

favorable to complainant the defendants appealed to the
supreme court and complainant prosecuted a cross-appeal. The
facts are fully stated in the opinion of the court.


*H. B. Greaves,* and *Pratt & Reed,* for appellants and cross-
appellees.

Counsel cited the following authorities: 1 Wigmore on Evi-
dence, sec. 228; *Gibbons* v. *Dunn,* 46 Mich., 146; *Cropp* v.
*Cropp,* 88 Va., 753; *State* v. *Scott,* 36 L. R. A., 721; 3 Wig-
more on Evidence, 1671; *Hughes* v. *Jones,* 116 N. Y., 67
(s.c., 15 Am. St. Rep., 386); *Wadsworth* v. *Sharpstein,* 8 N.
Y., 422; *Fitzhugh* v. *Wilcox,* 12 Barb. (N. Y.), 235; *Wait* v.
*Maxwell,* 5 Pick., 217; *Runnells* v. *Gurner,* 80 Mo., 477; *In-
gram* v. *Baldwin,* 9 N. Y., 45; *White* v. *Patterson,* 4 Mass.,
147; *Banker* v. *Banker,* 63 N. Y., 409; *McCormick* v. *Littler,*
85 Ill., 62; *Van Dusen* v. *Sweet,* 51 N. Y., 378; *Breden* v.
*Baker,* 86 Ind., 191; *Hunt* v. *Deanner,* 6 Wend., 497; *Ousler-
hout* v. *Shoemaker,* 34 Ill., 513; *Wadsworth* v. *Sherman,* 14
Barb, 169; *Ames* v. *Williams,* 72 Miss., 772; *Hamilton* v.
*Traner,* 78 Md., 26; *Evans* v. *Johnson,* 39 W. Va., 209; *State*
v. *Billings,* 55 Minn., 467.


*Chrisman & Howell,* for appellee and cross-appellant.

Counsel cited the following authorities: *Willis* v. *Jarnigan,*
2 Atl. Rep., 257; 2 Pomeroy, secs. 943, 947, 949, 951; 1 Story,
secs. 234, 239; Perry on Trusts, secs. 178, 179.


Argued orally by *F. B. Pratt,* and *H. B. Greaves,* for appel-
lant, and *J. B. Chrisman,* and *E. A. Howell,* for appellee.


MAYES, J., delivered the opinion of the court.

On account of the voluminous record in this case we find
it impossible to set out in this opinion the many contentions of
counsel or give a detailed statement of the pleadings or the

facts. We shall, therefore, only discuss those facts which we deem controlling in the decision of the case.

This bill was filed in the chancery court of Madison county by Frank Jones against Isidor Gross. The object and purpose of the bill is to obtain an accounting by Frank Jones with Isidore Gross and the cancellation of a deed in trust held by Gross on a quarter section of land belonging to Jones. Gross is a merchant at Canton, Mississippi, and Frank Jones is a negro farmer. The period covered by their mutual dealings with each other dates from 1883 to the year 1904, the date when this bill was filed. The original bill was filed in December, 1904, and subsequently the answers of all the defendants and the answer of Gross, and after these the amended bill by Frank Jones and answers thereto, with exhibits. The pleadings and exhibits consume over 150 pages of the record. The main allegations of the bill are that Frank Jones in 1883 purchased a quarter section of land in Madison county from one E. W. Lott. Jones paid fifteen bales of cotton for the land before the deed was made, and at the time the deed was made by Lott to Jones he agreed to pay $24 and six bales of cotton additionally, and, for the purpose of securing this sum to Lott, simultaneously with the making of the deed, executed to Lott a deed in trust on the property to secure this last-named sum. Frank Jones was then trading with Gross, and had also executed to Gross a subsequent deed in trust in the sum of $95.34 on the same land. The deed of Lott to Frank Jones was executed on the 15th day of February, 1883, and the deed in trust of Frank Jones to Lott, given to secure the $24 and six bales of cotton still due as payment on the place, was executed the same day, and the deed in trust by Frank Jones to Isidor Gross, to secure the $95.34 due Gross, was executed on March 27, 1883. It is shown in the record that Lott had the land sold by the trustee in his deed in trust ostensibly for the purpose of collecting his debt, but under circumstances which it is charged operated as

a fraud on the rights of Jones, and at this sale, which took place on the 11th of February, 1884, one H. H. Stadeker became the purchaser of the land for the sum of $125, and on that date the trustee made a deed to Stadeker of the land in question. At the time of this sale, as is stated above, Gross held a second mortgage on the land for the sum of $95.34. Frank Jones, learning of this sale of his land by Lott to Stadeker, and conceiving it to have been a fraud on his rights, applied to Gross to help him recover the land. It is charged in the bill, and fully sustained by the testimony, that Frank Jones was, and is, an ignorant, illiterate, trusting negro, unable to read or write, placing implicit trust and confidence in those with whom he deals. It is needless to trace the history of this contest between Stadeker and Jones for the recovery of this land, further than to state that the record shows that Gross employed F. B. Pratt, an attorney at Canton, to institute proceedings against Stadeker, in Frank Jones' name, for the cancellation of this conveyance to Stadeker and the cancellation of Stadeker's title, and that Gross paid Pratt the sum of $100 for attending to the matter for Frank Jones, and charged the amount to Frank Jones' account. This suit resulted in divesting the title from Stadeker, the matter having been compromised by Gross paying to Stadeker the sum of $165 for Frank Jones. The deed to this property was made to Gross by Stadeker on January 1, 1885, reciting a consideration of $165; but, instead of having the title made to Frank Jones, Gross had the deed made to himself, so that, under these circumstances, we have the record showing that the title became vested in Gross on January 1, 1885, and remained in him until he deeded it to Frank Jones and his wife, Maria Jones, on April 12, 1898. These dates become material later on in this opinion.

The bill states, and the proof shows, that the management of the suit against Stadeker was, without question, confided to Gross and the attorney employed in the case, and that after

a time he was informed by Gross that he had won his case, and that Gross stated that he had been compelled to pay the attorney his fee of $100, and Stadeker the sum of $124 in settlement of the claim held by Stadeker, and that Jones raised no objection to the payment of these sums, but felt that it was right, and felt grateful to Gross for thus befriending him. It is stated in the bill that Jones did not know that Gross had taken the title to the property in his own name for years afterwards. The bill further states, and the proof shows, that Jones remained in possession of the property all the while, and that Gross took the title merely as a security, and the bill states that he has been fully paid. The bill alleges, and the record shows, that year by year Frank Jones paid the taxes on the property through Mr. Gross, the taxes being charged to Frank Jones' account with Gross. The bill further alleges that Frank Jones had the most complete and trusting confidence in Gross; that he bought all he needed at Gross' store, and at the end of each year delivered to him all his cotton, trusting Mr. Gross to sell and credit him with the value of the cotton, never asking a question about it; and that this course of dealing began in 1883 and continued until 1904, the date at which the original bill was filed, without any accounting or final settlement ever being had between them, or any itemized account being rendered. It is alleged in the bill, and shown in the proof, that Frank Jones was adjudged insane on March 9, 1895, and sent to the lunatic asylum, where he remained until September 30, 1895, when he was discharged as cured. Frank Jones had been receiving a pension from the United States government, and the authorities, learning that he had been confined in the lunatic asylum, declined to pay his pension any further until a guardian should be appointed. Accordingly, on petition of Maria Jones, his wife, the chancery court, on the 7th day of October, 1895, seven days after he was discharged from the insane asylum, appointed a guardian for Frank Jones, and this

guardianship continued until September 30, 1903, when the guardian was discharged, so that from October 7, 1895, to September 30, 1903, Frank Jones had a guardian collecting and disbursing his pension money, though the guardian seems not to have acted in any other matter, except as to the collection of the pension money.

It is alleged in the bill, and the proof shows, that during all the time from March 9, 1895, to January 1, 1902, except between the dates commencing on March 9, 1895, to September 30, 1895, Frank Jones being confined in the asylum between these dates, he was at home, trading with Gross from year to year, and running his plantation. In 1898 he called on Gross to ask about his business, and Gross told him that he was still indebted to him, and, as the debt was about to become barred, Jones would have to sign some papers to secure Gross in the balance due or the land would be sold. It was on this date—that is to say, on April 4, 1898—and acting under the threat of Mr. Gross to sell his land if he did not secure the debt that Gross claimed was due him, that he gave a deed in trust to Mrs. Loeb on this property to secure the sum of $750, Mr. Gross having previously said to him that the amount due was $600. The bill alleges that Frank Jones did not understand anything about the transaction, and he and his wife only signed the deed in trust because Mr. Gross said for him to do it. The record shows that while the deed in trust was executed by Frank and Maria Jones to H. B. Gross, trustee for Mrs. Loeb, on April 4, 1898, Mr. Gross did not at that time make a deed to Frank Jones of this property, and it was not until the 12th day of April, 1898, that he made the deed, and, when he did make the deed, he deeded the land jointly to Frank and his wife, Maria Jones. This was the first knowledge, as shown by the allegations of the bill, that Frank Jones had of the fact that Gross had taken title in his own name. Frank Jones continued to trade with Gross from the date the deed in trust was

executed to Mrs. Loeb in 1898 until the filing of the bill in December, 1904. The bill charges that from 1884 to 1904, inclusive, Frank Jones delivered to Gross two hundred and thirty-four bales of cotton, and that upon an accounting with Gross it would be shown that Gross owed him more than $6,000. It is further alleged that Gross has clouded the title of Jones by taking deeds in trust on same from various members of the family as ignorant as himself, and that when same would be paid he left them standing open on the records. It is charged that the conveyance by Gross of land to Frank Jones and Maria Jones, his wife, was a fraud on Frank Jones' rights, and that Gross had no right to make the deed to his wife jointly with him, as his wife had no interest in the property, and the title held by Gross under the Stadeker deed was held in trust for Frank Jones, and that the title conveyed to Maria Jones was a nullity and without any consideration. Maria Jones is a party defendant. The bill then concludes with a prayer that Gross be compelled to furnish a complete accounting from 1883 to 1904, showing all the items of debit and credit against Frank Jones for this period of time, and for cancellation of all deeds in trust held by Gross on said land, and for the appointment of a commissioner to state an account against Gross, and a decree for $6,044.75, amount claimed by Frank Jones to be due him by Gross.

The defendants all answer the bill filed by Frank Jones; but, as all the answers except that of Gross are formal, we do not set out the answers of any of the defendants except that of Gross. Gross denies any knowledge of or participation in any fraud in any way, and denies that he was in any way connected with the sale of the land by Lott or purchase of same by Stakeker. Gross denies that he ever occupied any confidential relation to Frank Jones that would have precluded him from purchasing the land from Stadeker, and alleges that Jones knew all the while that he had taken the title to the land in his name.

The answer states that the title was made to Frank and Maria Jones at the request of Frank Jones; that, when Gross made the deed to Frank and Maria Jones, Jones was of sound mind; and that, when the trust deed was made by Jones and his wife to Mrs. Loeb in 1898, Jones was then of sound mind. Finally, it is alleged in the answer that Gross agreed to convey the property to Frank Jones for the sum of $600, and did execute a deed to Frank and Maria Jones of the property in question on their paying to him the said sum; that the said $600 was in good faith obtained from his sister, Mrs. Loeb, in 1898, for Jones, and Jones paid him (Gross) this amount, and Frank and his wife executed a deed in trust in favor of Mrs. Loeb to secure the amount so borrowed; that he had no interest in the matter beyond that stated. It is admitted in the answer that no rent was ever charged Frank Jones for the place during this time, and the answer states that Gross was satisfied with getting the interest on his money and the taxes paid on the property for the use of same. The answer denies that Gross was guilty of any fraud, or that he swindled Jones in any way, and denies that any usurious interest was ever charged by Gross to Frank Jones, and states that two years prior to the date of the deed to Frank and Maria Jones, no interest was charged at all. It is distinctly denied in the answer that Gross took the deed in his own name for the benefit of Frank Jones; but it is alleged that Gross bought in good faith for himself, intending to allow Frank Jones to repurchase if he could. The answer denies that Frank Jones was mentally unsound, and asserts that he was capable of comprehending every detail of his business. The answer denies that Frank Jones delivered to Gross two hundred and thirty-four bales of cotton, or any cotton not credited on his account, and alleges that Gross can only give an itemized account from 1892 to date of the filing of the bill, for the reason that all books preceding that time have been lost or misplaced. A

balance of about $471 is claimed to be due Gross by Frank and Maria Jones. Gross files an account as an exhibit to the answer, commencing same in 1892, the books kept by him prior to that time having been lost.

A great deal of testimony is taken in the case. The substance of it all is about as follows, viz: Frank Jones commenced dealing with Gross about 1883, and continuously dealt with him from that time until 1904, when this bill was filed. It is shown that Frank Jones was confined in the lunatic asylum for the first time in 1888. He was sent there in February, 1888, and remained there until the latter part of May of the same year, and was discharged as cured. Jones was again committed to the asylum on March 9, 1895, and remained in the asylum until September 30, 1895. He was a third time committed to the asylum on January 1, 1902, and discharged on September 30, 1903. During all this time he was trading with Gross, and the record shows that on one occasion Gross came to Jackson and went out to the asylum to see Jones. The record precludes doubt as to whether or not Gross had actual knowledge of Frank Jones' condition of mind during the time Jones was trading with him. From October 1, 1895, to September 30, 1903, there was an acting guardian for Jones in the chancery court, the duties of whom, it is true, seem to have been confined to the collection of his pension and its disbursement. The appointment of this guardian is irregular, but is material, as throwing light on his mental condition at the time. It is shown by the testimony that Frank Jones was in an unbalanced condition of mind for years, covering all the period of time that he was dealing with Gross. Some times he was in a better condition than others, but the overwhelming testimony of the witnesses and the facts shown by the records in the proceedings instituted for the purpose of having him committed to the asylum, conclusively show that Frank Jones' mind was unbalanced and that his whole business

life and dealing were characterized by childlike faith and implicit trust, and that from 1895 on, at least, he was incapable of making a contract.. It is shown that two of Frank Jones' brothers had been insane. It is shown that on one occasion Frank Jones was locked up in the Canton jail because he was crazy, and that he tore every thread of clothing from his body. It is testified to that Frank Jones' father before him was a lunatic, and had to be chained to a tree like an animal.

In the face of all these facts, coupled with the additional fact that Frank Jones was trading with Gross throughout all these years, and Gross went to the asylum to see him, can it be doubted that Frank was crazy, and that Gross knew it? It is attempted to be shown that his madness consisted only in a religious mania, and as to everything else Jones was sound in mind, and many of the witnesses so state; but upon a review of the whole record and all the facts, we agree with the chancellor that, from 1895 to 1903, Jones did not have sufficient mind to comprehend business matters, and was unable to enter into any contract, save such contract as the law would imply. After hearing all the testimony, Chancellor MAYES rendered the following decree, viz.:

"On the hearing of this cause the court allowed the amendment of the pleadings making Maria A. Jones a defendant, and, the case being submitted on all the pleadings and the proof taken, the court is of the opinion that the complainant is entitled to relief in the premises, and accordingly it is ordered, adjudged and decreed as follows: (1) That the deed made by Isidor Gross to Frank Jones and Maria Jones was a fraud on the rights of Frank Jones, in so far as it undertook to convey to Maria Jones an interest in the lands in controversy, and said deed is hereby canceled and held for naught, so far as she is concerned, but no further; and all the deeds of trust executed by Frank Jones and Maria Jones, or either of them, to Isidor Gross, and also the one by them to Mrs. C.

Loeb, are to be held illegal and void, and are hereby canceled and held for naught, and the fee-simple title to this land, being the S. E. ¼, or lots 7 and 8, of section 8, township 10, range 5 east, in Madison county, Mississippi, is hereby declared to be in Frank Jones, as between him and all the defendants to this cause, and free from all claims and incumbrances whatsoever in their favor. (2) The court further finds that it will be necessary to have an account stated between complainant, Frank Jones, and defendant, I. Gross, beginning with March 9, 1892, three years before complainant was declared a lunatic and confined in the insane asylum at Jackson, and ending with October 2, 1903, the date complainant was declared by decree of the court to have been restored to his reason and his guardian finally discharged, in order to know the status of the transaction between them during said time; and the court will therefore appoint a special commissioner to state said account, who shall state the same under the instructions the court now gives: Said commissioner for the first three years of said account, from March 9, 1892, to March 9, 1895, shall charge complainant with all the money and merchandise he obtained from defendant, I. Gross, during said time, and shall credit complainant with all the cash and cotton or other produce delivered by him, or any one else for him, to said Gross, at the current market price for each year, and there shall be no balance of any kind brought forward on March 9, 1892, and charged to complainant, and no interest shall be charged in said account, except upon balances after they became due and payable, and not more than six per cent. simple interest shall be charged on the balances, if any, for 1892, 1893 and 1894, unless it appears that a higher rate, not exceeding ten per cent., was contracted for in writing for any of said years. (3) Said commissioner, for the last nine years of said account, from March 9, 1895, to October 2, 1903, shall charge said complainant with only such money and merchandise had and bought of

defendant Gross as are shown to have been 'necessaries' to said complainant and his family, and said commissioner shall credit said account with all the cash, and cotton or other produce, at the current market price, delivered by complainant, or any one else for him, to said Gross for each year during said time; and if there shall be a balance on the account for the three years prior to March 9, 1895, in favor of said Gross, it shall not be charged against said complainant in the outset of this account, as the same is held by this court to be barred, but, if there shall be a balance in favor of complainant on this account for the three years referred to, the same is to be credited to complainant in the outset of this account, as that is held not to be barred, and no interest is to be charged in this account, except upon balances after they become due and payable, and the rate shall not be more than six per cent. simple interest on such balances, if any, during the years 1895, and 1903; but it is distinctly decreed that, if this accounting shall show a balance due by Frank Jones to Isidor Gross, the same shall be no charge or lien whatever on Frank Jones' property. E. B. Harrell is hereby appointed the special commissioner of this court to state this account, and he is directed and required to state the same under the instructions given in this decree, and he shall make the statement of that part of it for the first three years named separate from that part of it covering the last nine years named, and he shall file the same, when stated, with the clerk of this court, among the papers of this cause, and to be filed not later than May 1, 1906. Ordered, adjudged, and decreed this December 5th, 1905.     ROBT. B. MAYES, Chancellor."

From the above decree, and the decree thereon confirming the master's report, there is an appeal and cross-appeal.

We can find no fault with the decree of the chancellor in ordering a cancellation of the deed in trust executed in favor of Mrs. Loeb, nor in canceling all the deeds in trust held by

Gross between the dates of March 9, 1895, up to the date of filing the bill and vesting the title in Frank Jones. The record makes it plain that Gross took the title from Stadeker as trustee for Frank Jones, subject to the equities held by Gross. At the time the title was made to Frank and Maria, her name was improperly placed in the deed, and no title vested in her by the conveyance. It was manifestly correct for the chancellor to cancel all deeds in trust executed between March 9, 1895, to date of filing the bill, for the reason that Maria had no interest in the property, and Frank Jones, being *non compos,* was incapable of entering into any contract. The deed in trust to Mrs. Loeb was made in 1898, at a time when Frank could make no binding contract, and it was also proper that this deed in trust should be canceled.

There are two periods of accounting ordered by the chancellor; one commencing three years prior to March 9, 1895, the date on which Frank was adjudged insane, and the second embracing the period commencing from March 9, 1895, to 1904. It will thus be seen that the chancellor has limited the accounting to the date commencing from March 9, 1895, and refused to go behind that date for the purpose of opening the account of Gross and Jones. We have examined this entire record, and cannot say that the action of the chancellor in refusing to order an accounting behind the dates fixed by him was manifest error. Upon the uncertain and inclusive testimony as to the mental condition of Frank Jones behind the date limited in the period fixed for the accounting, we must take refuge in the finding of the chancellor. This reannouncement of the many times decided question that this court will not disturb the findings of the chancellor on a disputed question of fact, unless it is manifest that he is incorrect, disposes of the cross-appeal prosecuted in this case.

In the first statement of the account ordered by the chancellor, the master is directed to state the account from three

years prior to March 9, 1895, the date on which Jones was adjudged insane, and in the statement of the account to be made for this period of time, during which the chancellor holds that Jones was of sound mind and capable of making a contract, the master is directed to charge Jones with all that it is shown that he was indebted to Gross for on any contract made with Gross, and to credit Jones with all sums that he is shown to have paid Gross for that period of time, ending on March 9, 1895. From 1895 to 1904 Jones was under disability, being of unsound mind; but Gross could always have sued on his accounts. For this reason the chancellor decreed that if, upon an accounting from 1892 to March 9, 1895, it appeared that Jones owed Gross any balance, the balance due Gross should be declared to be barred; that, if the accounting showed that Gross owed Jones, such amount as it might appear that Gross was indebted to Jones should not be barred, but should be brought forward as a credit on the account of Jones and Gross, covering the period of the accounting between them from March 9, 1895, to date of filing the bill in 1904. In short, it is held that Gross is barred if the balance on the account is in his favor; but, if the balance on the accounting to 1895 from 1892 is in Jones' favor, it is not barred, because Jones was under disability from 1895 to 1903, and the balance should be brought forward as a credit to Jones in the accounting from 1895 to 1904. The master has failed to make proper charges against Jones, and has brought Gross in debt to Jones covering the three-year period, when it is demonstrated that Jones owed Gross. We may remark here that the account of Gross against Jones, as shown in the itemized account filed by Gross as an exhibit to his answer, and from which the account of the master is made up, shows the utmost fairness on Gross' part in his dealings with Jones covering the entire period of their transaction. There is nothing to indicate that Gross had defrauded Jones by any of the charges made, and the whole account is

composed of articles which might be.classed as necessaries, and characterized by charges that are, in the main, moderate, and, if the sustaining of the chancellor's decree rested alone on any fraudulent dealings in the accounts between the parties, it could not be sustained; but it rests on the fact that the record shows that Jones was crazy after 1895, and therefore incapable of contracting any debt, except for necessaries.

The mistake made by the master in the accounting for three years prior to the date at which Jones is declared insane—that is, March 9, 1895—is that he overlooks the fact that, in addition to the open account of Jones for each of the years 1892 to March 9, 1895, Jones owed a note. In other words, the master makes his first charge against Jones on April 11, 1892, of $3 paid to Pat Donahoe, and from this charge he literally adopts the account as made out by Gross, but omits to take any notice of the fact that, in addition to this open account, Jones had signed a note to Gross for a back balance of $772,76. The only charge eliminated from the account filed by Gross by the master is one overcharge on a deed in trust of 50 cents and an interest charge of 30 cents. In other words, the account filed by Gross is considered correct by the master, with the exception of this sum of 80 cents erroneous charge. For this year Jones pays $115.66, and his account amounts to $81.27, leaving a balance on the open account, taking no note of Jones' note for $772.76, of $34.39, which last sum is stated in the master's account as being the amount due Jones by Gross, totally ignoring the note. This was wrong. The balances are successively brought forward for each of the years 1892, 1893 and 1894, until January 5, 1894, at which time Jones signs a note, at a time when he was of sound mind, for the sum of $971.53 due October 1, 1894. This amount of $971.53 was the amount of all balances due Gross by Frank Jones, as agreed upon by them on January 5, 1894, and a note executed therefor by Jones, and at a time when it was determined by the chan-

cellor that he was of sound mind and capable of entering into a contract, and this must constitute the balance due for the three years prior to the adjudication of insanity, as a stated account for that period, unless it be shown that there is incorporated in the note usurious interest or other unlawful charges, and, if this is the case, then the amount of the note should be reduced by the amount of the unlawful or usurious charges, and the balance shall constitute the amount due Gross by Jones at the date he was declared insane. It was a natural mistake for the master to make under the decree directing the method of stating the account by the chancellor, which is of itself wrong in the following particular, viz.: In the second section of the decree directing the statement of the account the court says: "The commissioner for the first three years of the account, from March 9, 1892, to March 9, 1895, shall charge complainant with all money and merchandise he obtained from I. Gross during said time, and shall credit complainant with all the corn, cotton, or other products delivered by him, or any one else for him, to Gross at the current market price for each year, and there shall be no balance brought forward on March 9, 1895, and charged to complainant in the accounting beginning from March 9, 1895, to 1904."

This part of the decree was error. Whatever balance is shown to be due by Jones to Gross should be brought forward and placed as a debit against Jones in the outset of the account commencing from March 9, 1895, as it is a part of the account itself. Jones is in a court of equity, asking for an accounting covering all that period of time; and it is but equitable and right that in the outset of the accounting covering the period of time when he was insane he should be charged with any indebtedness contracted by him at a time when he was capable of contracting. Because he is insane, the amount due at the time he is declared insane is no less a debt than the debt which the law implies for necessaries after he is insane. This note for $971.53, due October 1, 1894, did not become barred

until October 1, 1900, or six years thereafter. In other words, it was a valid and subsisting debt from October 1, 1894, to 1900.

The same error of the chancellor is repeated in the third section of the decree, where it is stated: "If there be a balance on the accounting for the three years prior to March 9, 1895, in favor of said Gross, it shall not be charged against the complainant in the outset of the account." That is, the balance due by Jones shall not be charged against him in the accounting from March 9, 1895, to 1904, covering the period of time when Jones was insane. During this period of time the court has properly said that Gross could only charge Jones with the necessaries furnished him from March 9, 1895, to 1903, the date on which Jones was discharged as cured. The true method of stating the account is to bring forward the balance found due to Gross, as indicated by the notes signed by Frank Jones on January 5, 1894, after deducting from same the usurious or unlawful charges for three years back of March 9, 1895, if there are any, and place same as a debit to Jones in the outset of the account covering the period of accounting from March 9, 1895, to September 30, 1903, the date of his release from the asylum. An account should then be taken for each separate year, charging Jones with all necessaries furnished him by Gross on open account from 1895 to 1903, and crediting Jones with all amounts paid to Gross each year. If it shall appear for any of the years that Jones has more than paid his account, the overplus should be applied to the amount brought forward in the outset of the account as balance due on the note executed in January, 1895. This method of stating the account should be continued until the note executed by Jones to Gross is barred by the statute of limitations, which is October 1, 1900. After October 1, 1900, if any balance still remains due on the note, the overplus, if any, shall be no further applied to this note, as same ceased to be a binding obligation and became barred on that date, and should

be stricken from the account. The overplus payment of account after that date, if any, should be charged against Gross. The next period of accounting should commence after September 30, 1903, and continue to date of filing of this bill. During this period of time Jones should be charged with current contract price on all goods bought by him from Gross, and credited with such cash, produce, and cotton as it is shown he delivered to Gross; it being shown that Jones was sane during the time covered by this period.

In 1898, at the time when Frank Jones executed the deed in trust to Mrs. Loeb, he was insane, and therefore incapable of mortgaging his property or making any valid contract. For this reason this deed in trust should be canceled, and all mortgages of any kind executed between the date of March 9, 1895, and September 30, 1903, should also be canceled, as also should any deed in trust executed by Frank Jones after 1903, covering any supposed balance accruing for any of the years prior to that time, and claimed to be due under the deed in trust executed. The application of the payments made for the current years between 1895 and 1903, when the payments made by Jones exceed his indebtedness to the amount found due under the note of 1894, and to be charged to Jones at the outset of the account, is but the application of the equitable doctrine that equity will always consider that as done which ought to be done; and particularly is that applicable in this case, when it is shown that Gross has dealt in fairness with Jones, at least so far as his charges against him on open account are concerned. It would be unjust and inequitable to bring forward these overpayments on the open account, when it is shown that Jones stood at the time indebted to Gross on a note while these accounts were running, and refused to allow the overpayments to be credited on the note, and treat it as barred. It was not barred when these overpayments on the open account were made. Jones ought to have so applied the overpayments, and the court will do so for him. All payments applied to the

Loeb deed in trust, and paid to Mrs. Loeb by Gross, should also be allowed as payments on the amount charged to Jones on the note at the outset of the accounts, provided these payments were made before the note of 1894 was barred. These payments should be credited, not because there is any validity in the deed of trust executed to Mrs. Loeb in 1898, but because the basis of that claim found its predicate in the note executed in 1894 by Frank Jones, which was a concurrent indebtedness.

There are many contentions of counsel, but we think we have noticed all that are necessary to a settlement of this case. It is attempted to be shown by counsel for complainant, by estimation for a period of twenty years, that Gross received some two hundred and thirty-four bales of cotton, and, by estimation of the amount that it was probable that Jones got from Gross each year, that Gross now owes the sum of $6,000 to Jones. It is sufficient to say, in the language of the court in *Dickerson* v. *Thomas,* 67 Miss., 787 (7 South. Rep., 503): "The transactions sought to be opened extend through a number of years, and the evidence to support the particular items of settlement between the parties may have been lost by the lapse of time. The burden of showing the facts rests upon the complainant, and cannot be met by general and indefinite evidence. He must specify and point out the erroneous charges, and by direct and particular evidence relieve himself of the obligation which *prima facie* rests upon him to pay these accounts. He must shed light, and not darkness, upon the subject. It is not sufficient for him to raise a suspicion that indefinite credits, at uncertain times, have been omitted. Facts must be shown, in the light of which the court may act with confidence and intelligence."

*Let the cause by affirmed on cross-appeal, and reversed and remanded on direct appeal, with instruction to the court below to proceed to have the account stated in accordance with this opinion.*