## R. HUNTINGTON *v.* HEIRS OF A. I. BOBBITT.

1. STATUTE OF LIMITATIONS—ESTATE OF DECEDENT.—An administrator has no authority to make a promise to save the bar of the statute of limitations, as to a debt of his intestate, not barred at the time of his promise, and such promise by an administrator is not binding on the estate, nor on him personally, and will not prevent the completion of the bar by the continued running of the statute of limitations.

2. SAME—SAME—CASE IN JUDGMENT.—Where a note secured by mortgage on land was not barred, when the administrator of the maker, who had died, promised in writing, as such administrator, to pay said note on or before the 1st January, 1868, and the payee waited until after the 1st January, 1868, at which time the bar of the statute of limitations had become complete, but for the promise of the administrator, and filed his bill against the heirs of the intestate to foreclose his mortgage: *Held,* that the note was barred by the statute of limitations, and was not saved by the promise of the administrator; and as the note was barred, the mortgage could not be enforced.

3. CASE CITED AND DISAPPROVED.—The case of Byrd v. Wells; 40 Miss. 711, cited and disapproved.

APPEAL from chancery court of Leake county. YOUNG, Chancellor.

The bill shows that Bobbitt, the ancestor, was indebted to complainant Huntington, by note secured by mortgage on real estate and after Bobbitt's death, and before the mortgage note was barred by the statute of limitations, Hanson, the administrator of Bobbitt, by a written acknowledgment and promise indorsed on the note, waived in advance the

statute of limitations and promised to pay the note. The note was not paid and Huntington, within a short time after the promise of the administrator, but after the time when the note would have been barred but for the promise of the administrator, exhibited his bill to foreclose the mortgage. The heirs of Bobbitt were made defendants and they demurred to the bill, relying on the bar of the statute of limitations. The demurrer was sustained and the bill dismissed and Huntington appealed.

The administrator was not made a defendant to the bill and the statute of limitations, therefore, was not set up by him. The only question is, whether Huntington, the mortgagee, who relied on the promise of the administrator, made while the note was in full force, and gave time in order to favor the estate and save expense, was barred by reasons of his indulgence.

*J. A. P. Campbell*, for appellant.

The single question in this case is, whether this court will thus early recede from the wholesome doctrine of the well-considered case of Byrd v. Wells, 40 Miss. 711, which must be disregarded, or the decree in this case be reversed, and the demurrer to the bill be overruled.

The mortgage debt was a just one, and so known to the administrator, whose duty it was to pay it; and to save the estate from suit and expense, he agreed to keep alive the debt, and thus save the estate, which, but for that, would have been subjected to immediate suit and costs. The creditor waited in vain, and at last sued; and because he waited, relying on the written promise of the representative of the estate, he is met with the objection from the heirs, that his indulgence for their benefit has destroyed his claim. His answer is, that he dealt with the legal representative of the estate, with whom alone he could treat, trusted to his written promise, and he does not set up the bar of the statute of limitations.

The defense does not come from the administrator; he is

not a party defendant. He possessed a large discretion as to the payment of debts; he did not revive an extinct claim; did not create any new liability; did not add any thing to the burdens of the estate. He simply recognized, and obligated to pay, a valid, subsisting debt, capable at the time of immediate enforcement against the mortgaged property.

The fact that it is a mortgage debt cannot alter the rule. The mortgage is but an incident to the debt, which is the principal thing, and the relation of the administrator to a mortgage debt is not different from that which he bears to other debts of his intestate. His obligation is the same, and his rights and powers are the same, in reference to a mortgage debt as to others. Unquestionably, according to Byrd v. Wells, *supra*, the administrator, if sued by Huntington on the note, would not be bound to plead the statute of limitations, and if he should pay the note with the assets of the estate, he would be allowed a credit for it in his account. This debt, then, is enforceable against the administrator, as the legal representative of the estate. Suppose he should be sued and judgment had against him, and satisfaction be obtained out of the assets of the estate, would not the mortgage property, in common with other property of the estate, be liable, if needed, to sale for payment of the debts of the estate? If, then, the mortgaged property may be reached thus indirectly, as plainly it may, where is the evil of allowing it to be reached directly?

The right to enforce the mortgage depends on the right to enforce the note. Art. 4, p. 399, Rev. Code, 1857. An action at law was maintainable on the note, and the mortgage was therefore not barred.

Suppose Huntington had sued the administrator, on the note, at law, and obtained judgment, the administrator declining to plead the statute of limitations, and then Huntington had exhibited his bill to enforce the mortgage, could the statute have been successfully pleaded? The note would have been merged in the judgment and that clearly

would not be barred. Thus it appears, that if the statute can be pleaded at all in such case, it is by the administrator alone, and, if he does not plead it, none can. Let it be remembered, that in this case the administrator does not plead the statute. Consider that a suit may now be brought on the note against the administrator, who, under Byrd v. Wells, would not be required to act in bad faith and plead the statute, and that a judgment against him might be made the basis of ulterior proceedings to subject the estate, and the truth of my remark in the commencement of this argument will be apparent. Manson v. Felton, 13 Pick. (Mass.) 206 ; Northcutt v. Wilkinson, 12 B. Monr. 408 ; Hall v. Darrington, 9 Ala. 502.

*Raymond Reid*, for appellees, contended,

1. The note filed in the case is barred by the statute of limitations, notwithstanding its attempted renewal by the administrator, for such renewal is unauthorized and void.

2. The note and mortgage are distinct and separate contracts, and, even if the renewal of the note by the administrator was valid and authorized by law, the mortgage is barred ; and the note stands merely on the footing of other unsecured claims against the estate of Bobbitt, and suit must be brought upon it in a court of law.

On these points, these comments are respectfully submitted :

1. The acknowledgment of an administrator is insufficient to debar a note barred at the death of his intestate. The reason of this is, that such a renewal of a note necessarily involves the making a new contract by the administrator : but it is well selled, an administrator can make no new contract binding upon the estate of his intestate, unless he is expressly authorized so to do by law and the order of the proper court.    11 Smedes & Marsh. 9 ; 23 Miss. 389.

A debt barred since the death of the decedent cannot be debarred or renewed without a new contract, and this whether it be debarred or renewed before it goes out of

date or after. So, if an administrator, by a new contract, or by an acknowledgment in writing, cannot debar a debt barred at or before the death of the intestate, he cannot debar a debt that becomes barred afterward, either before or after the attachment of such bar, for in both cases a new contract is necessary, and where the reason is the same, the rule is the same. This position seems sustained by the decisions of the courts in these cases: 11 Smedes & Marsh. 9 ; 23 Miss. 389 ; Angell on Limit. 348, 349 ; 27 Miss. 149. This is more especially the case where the debt is a claim or lien upon the real estate of the decedent. 6 Johns. Ch. 360. For in such a case the rights of minor heirs are often involved, and their rights will not be allowed to be prejudiced by the acts of the administrator. 38 Miss. 621. The case of Byrd v. Wells, 40 Miss. 711, was a case in which the administrator had paid a debt barred since the death of the intestate, and claimed an allowance for the same, and the creditor had been induced, by the promises and representations of the administrator, to postpone suit, etc. In that case the court merely decided that the payment of a claim barred since the death of the intestate is in the discretion of the administrator, and that he may pay it if he pleases, when he has induced the creditor to postpone his suit by his promises, etc. There was no renewal of any claim by the administrator in that case, or any question or adjudication of his power to make such renewal. But in the case now at bar, the administrator resists the payment of the note, and joins in the demurrer to the bill, and there is no averment that he ever induced the complainant to postpone his suit by any promises or representations. Angell on Limit. 350. The question raised in this case was not, therefore, decided in that case.

2. A promissory note and a mortgage are distinct and separate contracts, and, before the adoption of the Code of 1857, were barred by different lapses of time. 37 Miss. 579. This being so, even a valid renewal of the one would not operate as a renewal of the other, and there is no pretense

there has ever been any renewal of the mortgage, by the administrator or otherwise. Under the Code of 1857, the foreclosure of a mortgage is barred by the lapse of time that barred the suit upon the claim it was given to secure. The claim in this case, as appears by exhibit A, was a simple note, and barred by the lapse of six years, and, being executed in April, 1856, it was barred before the commencement of this action. Code, p. 398. Although the mortgage was executed in April, 1856, yet the bar of the statute of limitations of 1857 may be claimed against it, if sufficient time has elapsed. Code of 1857, p. 402, and proviso of art. 28. So that the foreclosure of the mortgage by the effect of this proviso is barred by the lapse of six years, instead of the lapse of ten years, as contended for by complainant, according to the provisions of the act of 1855.

PEYTON, C. J. :

This is an appeal from a decree of the chancery court of Leake county, sustaining a demurrer and dismissing a bill filed to foreclose the equity of redemption of certain lands mortgaged by Alphonso I. Bobbitt to Robert Huntington, to secure the payment of a promissory note for $500, executed by said Bobbitt to said Huntington. The bill was dismissed upon demurrer on the ground that the note, to secure the payment of which the mortgage was executed, was barred by the statute of limitations. The note was given for money loaned by Huntington to Bobbitt, and was dated the 15th day of April, 1857. On the 20th of February, 1866, John A. Hanson, as administrator of the said Alphonso I. Bobbitt, deceased, acknowledged the justice of the claim, and promised, in writing, as such administrator, to pay said note on or before the 1st day of January, 1868. It seems to be well settled by adjudications in this state and elsewhere, that where the bar of the statute of limitations is complete the bar will not be removed and the debt revived against the estate of his intestate, by an express promise by the administrator to pay it. Sanders v. Robertson, 23 Miss. 389 ;

Moore v. Hardison, 10 Tex. 467 ; Moore v. Hillebrant, 14 ib. 312 ; Riser v. Snoddy, 7 Ind. 442. Nor will part payment. Miller v. Dorsey, 9 Md. 317.

The only question presented by this case for solution is, does the same doctrine apply where the bar is not complete at the death of the intestate ? The distinction between these cases cannot be made without putting a new clog on a statute, the utility of which has been greatly lessened and litigation increased by engrafting on it, by construction, an exception which is at war with its letter and spirit. The safest rule seems to be to hold that no promise by an administrator shall take a case out of the statute of limitations. This principle commends itself to our adoption by its certainty and uniformity, and as best calculated to promote the ends of justice in the administration of estates of decedents. An administrator can only discharge existing legal obligations against the estate. He is the trustee or agent appointed by law, for the benefit and protection of the interests of the creditors and distributees who stand upon their strict legal rights, which cannot be permitted to be prejudiced by the voluntary and unauthorized acts of the administrator. His duty is prescribed by law, and that is the limit of his power. The law determines the extent of the estate's liability, and he cannot enlarge it. He can make no contract except such as may be necessary in the course of his administration. If he can make no new contract, how can he make a promise which shall operate to prevent the bar of the statute of limitations from attaching to a claim against the estate ? To admit that he has such power would be to place the estate entirely at his arbitrary discretion.

In the case of Moore v. White, 6 Johns. Ch. 373, Chancellor Kent held, that any acknowledgment or admission by an executor or administrator will not bind the real assets in the hands of an heir or devisee. Is the heir, he inquires, to be charged, at the mere pleasure of the executor, with the debts of the ancestor ? Does it rest entirely in the discretion of the executor, whether the heir is or is not to be

permitted to use the statute of limitations, which the law has provided as a means of defense against a simple contract demand, which, perhaps, he knows to be unjust, though his ancestor has not left him the requisite proof? He could not, he says, bring his mind to think so.

In the case of Bell v. Morrison, 1 Pet. 351, it was held that a promise by one partner after dissolution of the partnership is to be deemed a new contract, springing out of and supported by the original consideration. This was declared to be so both upon principle and authority. Then the question as to executors and administrators resolves itself into this: Have they authority, acting as trustees of the personal property, to make a new contract binding upon those in whose behalf they are appointed to administer it? We think they have not. In such a case the administrator would not be liable in his official character as personal representative of the deceased for the want of power to make a new contract, which would be binding on the estate. Nor would he be liable in his individual character for the want of a new consideration, flowing to him and binding upon him personally, and without which he could not be held personally responsible upon the new contract or promise. And in support of this view of the law, we refer to Angell on Limitations, 280–287; Peck v. Botsford, 7 Conn. 178; Thompson v. Peters, 12 Wheat. 565; Fritz v. Thomas, 1 Whart. 66; Clark v. McGuire, 35 Penn. St. 259; Henderson v. Ilsley, 11 Smedes & Marsh. 9.

We are referred by counsel for the appellant to the case of Byrd v. Wells, 40 Miss. 711. That case differs from this in the fact that the executor had paid certain claims against the estate and asked a credit for them in his final settlement, which was excepted to on the ground that those claims were barred by the statute of limitations when they were paid by the executor. In this case the creditor is seeking to enforce the collection of a claim which is barred by the statute of limitations. And although that case may be correct, when viewed with reference to its peculiar facts and circum-

stances, we cannot concur with the court in their reasoning in that case. Prolonged administrations of estates of deceased persons seldom benefit any others than the admin- istrators of such estates. As a general rule, the sooner an estate is administered and settled up the better for all par- ties interested therein. Speedy administrations leave but little inducement to the personal representative to enter into speculation with the funds of the estate, which should be applied to the payment of the debts. The law gives six months to the administrator to collect the effects and ascer- tain the condition of the estate, during which time he is protected from suits by creditors. It is his duty to pay the debts of the estate as soon as practicable, and thereby save the costs of litigation, and stop the interest accruing against the estate, and when the debts are paid, the estate should be distributed as soon as possible, among those who are, by law, entitled to it. And the case of Byrd v. Wells may be cited as one of the best illustrations of the correctness of these views. Wells, the testator, died in February, 1844, and in the month of March following, Stewart proved his will and qualified as executor. And in June, 1860, more than sixteen years afterward, Byrd, as administrator *de bonis non* of said executor, filed in the probate court the final account of the executor. No inventory or report of the per- sonal estate or credits of Wells appears ever to have been made by the executor, Stewart ; nor did he, so far as appears, ever return an annual or partial account. What the execu- tor was doing with the estate during all this time, whether litigating with the creditors or not, we are not informed ; but certain it is, that as soon as Byrd filed the final account of the executor, litigation was commenced with the heirs and legatees of the testator. It is certainly difficult to con- ceive how the heirs and creditors could be benefited by the long procrastination of the administration of that estate. The law, justice and policy conspire in requiring a speedy administration of the estates of decedents.

And as we have seen that the administrator cannot charge

himself personally without a new consideration, and that he cannot charge the estate on the foundation of the old one, to the prejudice of the creditors and distributees, whose interests might be materially affected by it, it necessarily follows that the bill of complaint in this case cannot be maintained, and that, therefore, the court below did not err in sustaining the demurrer and dismissing the bill.

*The decree is affirmed.*