## HYDE *v.* MILLER, STATE REVENUE AGENT.[*]

[106 So. 630.   No. 25356.]

(Division B.   Jan. 11, 1926.)

INSANE PERSONS.   *Not necessary to recovery by state for support of insane person that authorities shall have previously made inquiry and ascertained existence of such person's estate; determination of facts as to existence of insane person's estate by hospital authorities held not conclusive of state's right to recover for support of such person.*

Under section 3215, Code of 1906 (Hemingway's Code, section 5557), an insane person who has an estate more than sufficient to take care of his or her dependents and pay his or her debts is liable for support in the state insane hospital as provided for

in said section, and it is not necessary to a recovery by the state that the authorities shall have previously made inquiry and ascertained the existence of such estate. The determination of the facts by the hospital authorities is not conclusive of the state's right.

*Corpus Juris-Cyc. References; Insane Persons, 32 C. J., p. 688, n. 97.

APPEAL from chancery court of Lauderdale county. HON. G. C. TANN, Chancellor.

Suit by W. J. Miller, State Revenue Agent, against Bolivar Hyde, guardian of an insane person. From a judgment overruling his demurrer to plaintiff's complaint, defendant appeals. Affirmed and remanded.

*Chas B. Cameron,* for appellant.

This is a proceeding instituted by the state revenue agent against B. F. Hyde, guardian of Miss Ella Elmire, wherein it is sought to recover from said guardian certain alleged sums of money claimed by the state revenue agent to be due the state of Mississippi under the provisions of section 3215, Code of 1906 (section 5557, Hemingway's Code). This statute contemplated and the legislature, without question, intended that all *bona-fide* residents of Mississippi, being insane persons, should be admitted to said hospitals free of charge, except that if said insane person be found upon examination to be the owner of an estate, over and above all indebtedness, more than sufficient for the support of his natural dependents, then said person or his natural guardian should pay the amount required by statute for his or her support. In short, before the guardian was required to make any payment to the state treasurer for the support of the insane person, there must have been an examination and this examination must have disclosed the fact that said party was found to own an estate over and above all indebtedness, and more than sufficient for the support of his natural dependents.

This petition or bill does not show that any examination was had, nor that there was ascertained at any time the existence of a sufficient estate over and above all indebtedness and more than sufficient for the support of her natural dependents. We submit that this allegation is vital and without the same, the appellee should not be permitted to proceed.

To our minds, the failure to allege that an examination was had and that the estate was found then and there to have been in a condition such as was contemplated by the statutes is a fatal omission, and the same being a condition precedent to the right to recover said money, the bill is fatally defective and this demurrer should, therefore, have been sustained on this ground alone.

*McBeath & Mahon,* for appellee.

When a person is adjudged insane and is committed to one of the state insane asylums, the superintendent of that institution is commanded by law to accept that insane person and admit him to the institution if there is a vacancy therein. The question of whether or not the insane person has an estate cannot be taken into consideration by the superintendent of the asylum. The question of whether or not the board money, directed to be paid under section 5557, Hemingway's Code, has been or has not been paid cannot be taken into consideration by said superintendent. The argument that said superintendent should make an investigation, before admitting said insane person to the asylum, to determine whether or not he or she has an estate, is an unreasonable argument. The superintendent would have to go into eighty-two counties of this state to make a full investigation, and this would consume months of his time. What would become of the insane person during this time? What would be the position of said superintendent for not admitting said insane person, as directed by law? What position would the state be placed in by this ac-

tion on the part of the superintendent of a state insane asylum?

In our judgment, this section does not mean that the asylum authorities must make an investigation before the board money is due and payable, but means that when a guardian of an insane person finds that the insane person has an estate over and above all indebtedness and more than sufficient for the support of his natural dependents, he must comply with the provisions of section 5557, Hemingway's Code, by paying to the state treasurer, in advance, an amount of money equal to six months' board at a rate not exceeding four dollars per week. The statute sets forth other duties to be performed by him. The statute does not say he "*may*" do this thing, nor does it say that he must do this *when demand is made of him,* but says that he "*shall*" do this thing. The intent of the statute is that at that time in the guardianship proceeding when the guardian realizes that his ward comes within the purview of this statute, he comply with its provisions. It is as much his duty, under the law, to do this as it is his duty to account for the estate of his ward, and to perform the other duties of a guardian.

It is true that the bill does not contain the words "an examination has been made." The making of an examination was the duty to be performed by the guardian and this is not a suit on the part of the guardian. It is a suit to collect for the state from the guardian what he should have already paid after he made said examination. The bill alleges that, "the said Ella Elmire has an estate, over and above all indebtedness, more than sufficient for the support of her natural dependents." We contend that this is the essence of the statute, and when combined with the fact that the ward's obligation to the state has not been fulfilled, is the basis for this suit. We contend that the bill contains all that is essential to this cause.

ETHRIDGE, J., delivered the opinion of the court.

The state revenue agent brought suit against the appellant for the expense of maintenance of appellant's ward in the East Mississippi Insane Hospital under the provisions of section 3215, Code of 1906 (Hemingway's Code, section 5557), which reads as follows:

"Every lunatic and insane person, a *bona fide* resident of this state, and who shall not have been brought into this state insane or a lunatic within five years, and the latter in special cases by the consent of the Governor, shall be admitted into or confined within either of the hospitals free of charge. But if any lunatic or insane person, upon examination, be found to own an estate, over and above all indebtedness, more than sufficient for the support of his natural dependents, his guardian shall pay to the treasurer, in advance, an amount of money equal to six months' board, at a rate not exceeding four dollars per week, which in no case shall exceed cost of board, and shall deposit with the treasurer an amount of money necessary to supply the patient with sufficient clothing, as required by the superintendent, and shall remove the patient when notified so to do by the superintendent. In case of the death or removal of the patient before the expiration of the time for which payment shall have been made, the treasurer shall refund to the guardian an amount proportionate to the unexpired time for which payment was made."

It was alleged that the ward had an estate over and above all indebtedness more than sufficient for the support of her natural dependents, and that under said statute there should be an allowance or recovery of the amount of four dollars per week from the date of the confinement of the ward in 1907 to date, and that the cost of maintaining the ward exceeded said amount. The bill was demurred to on numerous grounds, mainly however upon the ground that there was no inquiry at the time of the admission of the ward and adjudication by the superintendent or hospital authorities of the ward having

such estate, and that the liability depended upon such adjudication under the terms of the statute. It is insisted that such finding was a condition precedent and that such charge could only be made from and after such finding by the hospital authorities upon such inquiry. The chancellor overruled the demurrer and granted an appeal to settle the principles of the case.

The principle to be settled is whether or not a charge could be made against such ward until after there had been a finding of fact under the statute. The appellant insists that the charge should only date prospectively from such finding, while the appellee contends that the fact of having such estate is what makes the liability. In other words, the appellee contends that it was the intent of the legislature to charge the ward for her support in the institution whenever and wherever such ward had an estate more than enough to pay for the support or his or her dependents and pay their debts, and that the fact governs.

A careful consideration of the statute and its purposes convinces us that the patient admitted to the institution should be charged with the statutory amount, or whatever amount may be necessary for the proper support of such ward, not exceeding the maximum named, whenever there is enough to pay for the support of the dependents and pay the debts of the ward, left over to pay the support of the ward. The statute did not intend to make it the duty of the hospital authorities to undertake an extensive examination which would involve perhaps the going into other counties than where the institution is located and examining the records and making inquiries. Nor did it intend to make the judgment of the superintendent or the other authorities of the hospital conclusive. The purpose of the statute was to have the patient support herself at her own expense whenever she was able to do so without denying her dependents and creditors their just rights.

The chancellor was therefore correct in overruling the demurrer, and the judgment is affirmed and the cause remanded, with leave to answer within thirty days from receipt of the mandate in the court below.

*Affirmed and remanded.*