## Johnson *v.* Odom.

(Division A.   June 9, 1947.)

[31 So. (2d) 120.   No. 36475.]

Morgan & Thornton, of Kosciusko, for appellant.

**O. H. Barnett, Jr.,** of Carthage, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The administrator is contesting the allowance of claim which the appellee Johnnie Odom attempted to probate against the estate of D. H. Godon, deceased, in the sum of $9,488 for ''personal services'' rendered to the decedent.

The claim is made out as follows:

''In Account With Johnnie Odom

''Personal services rendered by Johnnie Odom to decedent as follows:

| | |
|---|---:|
| ''In the year 1941, 343 days @ $7.00 per day | $2401.00 |
| ''In the year 1942, 365 days @ $7.00 per day | $2555.00 |
| ''In the year 1943, 365 days @ $7.00 per day | $2555.00 |
| ''In the year 1944, 321 days @ $7.00 per day | $2247.00 |
| ''Total | $9748.00 |
| ''Less payment Nov. 17, 1944 | $ 260.00 |
| ''Balance due, owing and unpaid | $9488.00'' |

The foregoing statement of account is supported by the statutory affidavit provided for by Section 568, Code 1942, as to being ''just, correct, and owing from the deceased; that it is not usurious, and that neither the affiant nor any other person has received payment in whole or in part thereof, except such as is credited thereon, if any, and that security has not been received therefor.'' But it will be observed that as ''a statement of the claim in writing, signed by the creditor,'' under the stat-

ute it does not state the nature and character of the services rendered; nor does it state whether the same were rendered pursuant to a contract with D. H. Gordon during his lifetime, either express or implied, that the services were to be compensated for.

An administrator has no right to pay a probated claim for services rendered to the deceased in his lifetime, in the absence of either an express or implied promise on the part of the decendent to pay for the same. Such promise is the sole foundation of any liability on the part of the estate to pay a claim of this nature and character.

Since the claim does not state whether the service were rendered by the claimant as an employee at a sawmill, plantation manager, farm hand, or an attendant in administering to the physical needs of the decedent in his declining years, the payment thereof by the administrator as a compensation to the claimant could not be made intelligently to cover all services for which the estate may be liable. He would have acted at his own peril if he had paid such a claim as that here attempted to be probated if it should have thereafter developed under proof offered by the heirs at law that the services had not been rendered pursuant to a contract with the decedent to pay for the same.

In the case of Lehman v. Powe, 95 Miss. 446, 49 So. 622, 623, it was held that: ''One of the objects of the statute in requiring claims to be probated, allowed, and registered is that the administrator and all other parties concerned may ascertain what debts are claimed to be due by the estate, and act intelligently in determining whether the same are just and should be paid, or whether the same should be contested. The statute also clearly contemplates that, in presenting claims against the estate of a decedent, the evidence or statement of same probated must on its face show a prima facie right in the claimant to recover from the estate the amount claimed, and that it must disclose the nature and amount of the claim with sufficient precision to bar, when paid, an action therefor.''

This language was cited with approval in the cases of Whitehead v. Puffer, 187 Miss. 193, 192 So. 566; Wilson v. Yandell, 174 Miss. 713, 165 So. 430; and First Columbus National Bank v. Holesapple-Dillman, 174 Miss. 234, 164 So. 232.

The term ''personal services'' is too broad and indefinite to enable an administrator to prepare a defense thereto, or to determine whether it should be paid or contested where it does not show on its face a prima facie right in the claimant to recover from the estate the amount claimed. In order for the claim to affirmatively disclose such a prima facie right, it should inform the administrator whether the personal services were rendered pursuant to a contract, either express or implied, to the effect that they were to be compensated for. Unless the claim is predicated on that foundation, the administrator has no authority to pay it, and the court would be without the right to order him to do so. It is not a sufficient answer that the administrator could have asked for a bill of particulars under another statute. It is mandatory that the probate of the claim shall on its face disclose a prima facie right in the claimant to collect the same by disclosing the nature and character of the services rendered and the basis of the liability to pay therefor.

The Court is therefore of the opinion that the probate of this claim is insufficient, and that the decree of the trial court in allowing any part thereof should be reversed, and a judgment rendered here for the appellant, since it is now too late to amend the same.

While unnecessary to the decision of this particular case, in view of the conclusion hereinbefore announced, we call attention to the fact that the claimant was permitted to testify, over objections of the administrator, as to the services rendered by him to the decedent during the nearly four-year period covered by the claim. However, he was not permitted to testify as to any agreement that he had with decedent in regard to payment therefor.

The trial court, in permitting the claimant to testify to the extent above stated, was undertaking to follow the course adopted in the case of Eloise Jackson, Adm'x, v. Rosa Lewis et al. (Miss.), 24 So. (2d) 532, which was affirmed here without an opinion, and wherein the trial court had permitted a claimant to so testify. But in that case the claimant relied upon a parol agreement that in consideration of the services being rendered, the beneficiary thereof would make a will leaving her property to the claimant. The record in that case discloses that the trial court permitted the claimant to testify as aforesaid to the services rendered, and not as to the agreement with the decedent in regard to making a will, but the ruling was based on the ground that the claim for compensation on quantum meruit did not originate during the lifetime of the decedent, but only at her death, intestate; that the agreement to make a will was not breached until the beneficiary of the services died without making a will. We affirmed the decision of the trial court in so holding. Moreover, it was not denied in the answer in that case that the services had been rendered as alleged, but there was merely a denial of the alleged agreement.

Therefore, we do not think that the affirmance of the case of Jackson v. Lewis, supra, is authority for permitting a claimant to testify as to services rendered by him to a decedent, since the proof of the rendition of such services is necessary to establish the claim. To establish such a claim, the claimant must not only prove an agreement, either express or implied, to pay for the services rendered, but must also show that they were actually rendered. In doing so, he is establishing by his testimony his own claim against the estate of a deceased person.

The writer of this opinion desires to state that his concurrence in the reversal of the case, on the ground of the insufficiency of the probate of the claim, and in the rendition of the judgment here in favor of the appellant, is influenced to some extent by his own conviction that

the contention of the claimant is wholly unreasonable when he claims that he worked for the decedent for nearly four years at $7 per day without being paid a single dollar for his services until the day he left the farm of the decedent on November 17, 1944, when he was paid $260 on the alleged accumulated indebtedness of $9,748.

The version of the agreement for compensation as related by the wife of the claimant fails to disclose whether the $7 per day was to be paid weekly, monthly, or annually, and as to how long the agreement was to continue in force and effect.

The claimant was then a tenant sharecropper, with a wife and two or three children to support, and he made on an average only about one-half of a crop during each of said years, and he is not shown to have had any income other than one-half of these crops and the wages for a few weeks' at a sawmill, with which to support himself and family, living separate and apart from the household of the decedent.

Assuming that he rendered the services as claimed by him, and as testified to by other witnesses, as a kind of an overseer of decedent's farm, looking after his livestock, supervising the work of the other three tenants, serving as chauffeur for the decedent and ministering to his physical needs, it is wholly unreasonable that he would have delivered one-half of the crop each year to the decedent throughout the four-year period without having an annual settlement in regard thereto, and that he would have entered upon another year of service for the decedent at the beginning of each said years, instead of going on the ''defense work'' which his wife says was available at good pay, without ever having collected a dollar of the $7 per day compensation to which he claims he was entitled.

Moreover, it is not explained as to how the $260 payment was arrived at on November 17, 1944, when he moved away from the decedent's farm. Nor is it explained as to why, during the next year of decedent's

lifetime, the claimant did not return to the farm of the decedent or make demand for any part of the remaining $9,488 which he now claims the decedent owed him.

It was shown without dispute, and admitted by the claimant, that the decedent was prompt in meeting his financial obligations at all times, other than this and other like claims probated against his estate for personal services aggregating the total sum of $18,517.71. It was also shown without dispute that the decedent had ample cash funds throughout the four years to meet any obligation that he owed, and that the estate left by him is worth about $40,000, mostly in cash. He had been for many years a widower and was childless, and he had no reason to conserve his property for collateral relatives to the detriment and injustice of those who may have been ministering to his needs by not paying them anything for their services through such a long period of time.

In other words, it is the opinion of the writer, speaking for himself alone, from the facts and circumstances disclosed by this record, that the payment of the $260 made to the claimant on November 17, 1944, when he left the decedent's farm, was unquestionably in full settlement of any claim for services that may have been then due and owing, although there was testimony to the contrary.

Reversed and judgment here for the appellant.