TALBERT *v.* ELLZEY *et al.*

(In Banc.   May 24, 1948.   Suggestion of Error Overruled June 14, 1948.)

[35 So. (2d) 628.   No. 36740.]

**Jackson, Young, Daniel & Mitchell,** of Jackson, for appellant.

**B. D. Statham,** of Magnolia, for appellee.

Argued orally by **Joe H. Daniel,** for appellant, and by **B. D. Statham,** for appellee.

**L. A. Smith, Sr., J.,** delivered the opinion of the court.

In the administration of the estate of Mrs. Ora Shirley, intestate, in the Chancery Court of Pike County, appellant probated his claim in the amount of $1,522.77. It sought payment for board, lodging, clothing, medical attention and nursing; taxes on her property furnished the decedent, his sister, for the years 1939-1944 inclusive; and funeral expenses paid by claimant for the decedent's interment. A contest thereof was filed by James L. Avera, the only heir-at-law of the decedent, being her son by a former marriage. The final decree allowed the claims for taxes and funeral expenses, but disallowed all

other items: board, lodging, clothing, medical attention and nursing. Claimant appealed. There was no cross-appeal.

The sole question before us is, was the chancellor correct in such disallowance, as stated, supra. However, the only objection made by the contestant in the chancery court, which we consider worthy of special discussion, is that the Statute of Limitations in this case barred all portions of appellant's claim for services and necessaries given Mrs. Shirley more than three years prior to her death.

At her death on February 1, 1946, Mrs. Shirley was about sixty-one years of age. Pursuant to a writ de inquirendo lunatico in Pike County, she had been admitted to the State Hospital at Whitfield on or about December 18, 1938. While there, she besought her brother, the appellant here, to remove her to his home, avowing that she was not crazy. Although the authorities of the hospital declared that she was suffering from dementia praecox, paranoid type, they paroled her to appellant, on condition that he would be responsible for her care and actions. On that date, May 1, 1939, he signed the following commitment:

"Parol, Discharge or Release of Patient C. R. Talbert am today removing Mrs. Ora Shirley from the Mississippi State Hospital against the advice of the Staff Doctor in charge with the understanding that the patient is still mentally ill. I agree to assume all responsibility for her care and actions while outside of the Institution and while in my custody, to relieve the Hospital of all responsibility in connection with this patient. I also agree, should it become necessary at any time within a period less than a year, to return this patient to the Hospital to do so without any expense whatever to said Mississippi State Hospital. This the 1st day of May 1939."

After arrival at the home of her brother, she was never of any help around the place, required and re-

ceived constant attention; and the necessities of life; and shown great consideration; and appellant paid the taxes on her property. She paid nothing for these necessities, or for her taxes. When she departed this life, appellant furnished the funds for her funeral. So, no part of her small estate was utilized for the purpose of her support during her life, although the brother expected reimbursement at her death. Appellant made no demands of her personally, since she was non compos mentis; and he kept her property intact against the contingency that she might need it for some major emergency affecting her mental or physical health. But it is clear from the evidence that he expected to be compensated out of her estate. It is interesting to note that, had she remained in the hospital, she could have been compelled to pay for her support there since she had a sufficient estate. Section 6905, Code 1942; Hyde v. Miller, 141 Miss. 421, 106 So. 630. This fact lends strength to the testimony in the record that appellant expected compensation from her estate. His agreement to assume ''responsibility for her care and actions while outside of the Institution,'' and in his custody, did not commit him to the gratuitious support of his insane sister.

It appears from the testimony that the contestant, her son by a former marriage, as stated, contributed nothing to the support of Mrs. Shirley. He defrayed none of the expenses or costs of the matters for which appellant sought compensation in his probated claim.

This case in its material aspects is almost a counterpart of McCully et al. v. McCully, 175 Miss. 876, 168 So. 608. There, as here, relatives received into their home an insane person, for whom they cared and to whom they furnished practically the same support and services as in the case at bar. There was no express contract in either case, as the obligated person was non compos mentis, and incapable of making a contract. We held that an insane person or estate is legally obliged to pay

for necessities furnished such person in good faith under circumstances justifying their being furnished.

We declared that wants of an insane person, which are personal to body and mind are "necessaries" within the rule requiring an insane person or his or her estate to pay for necessaries furnished such person in good faith. In the case at bar, there can be no question, in our opinion, that the disallowed liabilities in appellant's probated claim are clearly within this rule.

Here, appellant received his sister into his home, and in good faith furnished her with the listed necessities of life, expecting repayment from her property. This obligation was to continue indefinitely, and did continue until her death, and there was no fixed time for payment thereof. Therefore, the rule announced by us in the McCully case, as to the Statute of Limitations, applies with equal force to the case at bar. That is, the statute did not start to run against Mrs. Shirley's liability to her brother until the date of her death. The question of limitations as to part of the claim of appellant is earnestly argued before us in the instant case.

The cited case also correctly held that taxes on the property of the insane decedent paid by her nieces were recoverable by way of reimbursement, and amounts for her board, nursing, clothing, care, and attention were compensable from their aunt's estate. The two cases are practically parallel, and the rules of the McCully case controlled the issues under consideration by us here. However, in the case we are considering the chancellor incorrectly disallowed the claims for services and necessaries.

But, argues the appellee, in Boggan v. Scruggs, 200 Miss. 747, 29 So. (2d) 86, we announced a different rule as to the Statute of Limitations affecting probated claims. In that case, involving a breached contract by the decedent to make a will benefiting the claimant in consideration of her rendering the services of washing, ironing and cooking, and in which the breach of the contract was

discovered upon the death of the promissor of such testamentary compensation, whereupon the promisee probated a claim to intestate's estate, we held that the probated claim was subject to the three-year Statute of Limitations, Code 1942, Section 729, and that facts which prevent the Statute of Limitations from running against a probated claim "should appear in some form on probate thereof, and cannot be made to appear for first time by evidence offered when claim is under consideration in administration of deceased's estate." However, it to be noted that all affidavits for probate of account require it to be stated that "the claim is . . . owing from the deceased." Section 568, Code 1942. The authority for the holding in the Boggan case was cited as Whitehead v. Puffer, 187 Miss. 193, 192 So. 566. It is manifest at once that either the McCully case is correct as to the Statute of Limitations, and the Boggan case incorrect, or vice versa. Both cannot stand. Attention is called to the fact that the basis of decision in the Boggan case is Whitehead v. Puffer, not even remotely dealing with liability for services and necessaries furnished an insane decedent, but with an open account for merchandise sold a customer. It would seem therefore not in point in that case, or here.

However, when the Boggan case was decided, the McCully case was not recalled to our attention, and on our further research it is developed that the Whitehead case cited in the Boggan case deals with an entirely different kind of claim, as stated, ante. This has resulted in the necessity to partially overrule the Bogan case standing alone rather than to overrule the McCully case, and several other cases of similar import followed through the years. For instance, in Lee v. Lee's estate et al., 186 Miss. 636, 191 So. 661, we held that a claim against the estate of decedent for board, lodging, laundry, and so forth, furnished under contract which had no fixed duration was not barred as to items furnished more than three years prior to death of decedent, since the

Statute of Limitations did not commence to run until the death of the deceased. The McCully case was there cited with approval.

In the case of Gaulden v. Ramsey, 123 Miss. 1, 85 So. 109, 110, this Court said that a contract for board, lodging, and services, whether express or implied, with no time fixed for payment or for the termination of the contract, is a continuous one, and the Statute of Limitations is inoperative until the contract is terminated by death. There we said: "If the statute of limitations commenced to run against the appellee's claim for board and lodging when furnished and for services when rendered, it may be that because of the length of time that elapsed after the death of the deceased before the claim therefor was probated a part of it would be barred. But this statute did not begin to run against this claim until the death of the deceased, and it was probated within the required time after her death." There was cited 3 Elliott on Contracts, Section 2661, p. 798; 25 Cyc. 1077, 1104 et seq.; 1 Wood on Limitations, (4th Ed.), p. 661, Section 119c (2); Sullenbarger v. Ahrens, 168 Iowa 288, 150 N. W. 71; Crampton v. Logan, 28 Ind. App. 405, 63 N. E. 51; Bowie v. Trowbridge, 158 Iowa 98, 138 N. W. 846. Furthermore, we there said: "Consequently the contract, and it is immaterial whether it was an express or implied contract, was a continuous one, and the statute of limitations does not begin to run against such a contract until it has terminated, which in the case at bar was by the death of the deceased," as was true in the case here.

The contract in the instant case was an implied one under the rule in 44 C. J. S., Insane Persons, Sec. 114, 115, p. 274, where it is said: "Generally, when necessaries are furnished to a person who by reason of mental incapacity cannot himself make a contract, the law implies or imposes an obligation or agreement on his part to pay for them; his liability for necessaries is deemed rather a benefit than a disadvantage to him." See also 28 Am.

Jur. 699, 700, Section 62, Insane and Other Incompetent Persons; Gross v. Jones, 89 Miss. 44, 42 So. 802; Martin v. De Jarnette, 185 Miss. 76, 187 So. 202; McCully v. McCully, 175 Miss. 876, 168 So. 608; 14 R. C. L. 586, Section 41.

This brings us down to the case of Stephens v. Duckworth, 188 Miss. 626, 196 So. 219, 220. In that case, a daughter, relying upon an express contract by her father to give her the home place at his death if she would remove to his home and take care of him, she did so. The father died, and breached the contract. (Compare these facts with the situation in the Boggan case.) The daughter filed her petition in the chancery court asking for compensation for the period involved, eight years. She did not probate her claim. Among other things, contestants plead the Statute of Limitations of three years. On reference to a master for a finding of law and fact, he found for the claimant, and against the contestants, awarding $20 on a quantum meruit basis for ninety-five months. "He further reported, as a matter of law, that the amount of recovery sought was not a provable claim; that the contract was a continuous one, and that, therefore, the statute of limitations did not apply."

The chancellor, upon hearing the report of the master, and exceptions thereto, reversed each of his findings, both upon points of law and upon the facts. Among other reasons for so doing, the chancellor held that the recovery sought was a claim against the estate which had not been probated. We reversed the chancellor and rendered a decree here for the claimant-daughter. Upon the reasoning in our opinion there, we declared that "·her claim propounded by her petition before· the time for probation of claims, was not such as could be probated as required by Section 1671, Code of 1930, as amended by Chapter 304, Laws 1934 [now Section 568, Code 1942]. . . . It was a liability in the strictest sense of the word, and not a claim within the meaning of our statutes upon probated claims." Several Mississippi cases were

cited in support of this announcement, which an examination of the report will disclose. This will dispose of that part of our holding in the Boggan case to the effect that ''facts which prevent the statute of limitation from running against a probated claim should appear in some form on the probate thereof and cannot be made to appear for the first time by evidence offered when the claim is under consideration in the administration of the decedent's estate,'' since it was ''not a claim within the meaning of our statutes upon probated claims.'' That being so, and no probate being required, and a hearing on petition being permissible, no justifiable reason could exist for the rule announced in the Boggan case on the point of limitation. The record of the court in the Duckworth case would be bound to show that the decedent was indeed deceased; and when that melancholy event occurred, then the Statute of Limitations commenced to run.

With reference to the Statute of Limitations in the Stephens v. Duckworth case, supra, we also said: ''It is not even contended here in appellee's brief that this was not a continuing claim for services, and therefore not barred by the statute of limitations.'' The case cited as its authority for this holding on the Statute of Limitations, Ellis v. Berry, 145 Miss. 652, 110 So. 211, and Gaulden v. Ramsey; Lee v. Lee's Estate, and McCully v. McCully, supra.

Even if it could be said that Boggan v. Scruggs, by implication, overruled McCully v. McCully, there would still remain all of the other contrary decisions, which would also have to be considered as overruled by implication, in order to clear the way for the Boggan case. However, the Boggan case would have been correct if the claim presented had been the general type of claim on open account, and some other types of demands agaist a decedent's estate, on which limitations commenced during his lifetime. It was wrong in seeking to justify itself by a general rule not applicable to the

special field of furnishing services and necessaries to a decedent, as to which we have always ascribed a specific rule, concerning the commencement of the Statute of limitations. As stated, supra, where the petition was filed, the record was bound to have shown that the person obligated was deceased, and this would obviate the necessity of averring the death in the petition. So, would it, too, for the same reason, prevent a requirement of such averment in a probate claim or affidavit of the kind involved here. Furthermore, the statute itself prescribes what such an affidavit must contain, and the form and contents of the claim, and it does not direct either to the state when the debtor died. The record of the administration cause authorizing the notice to creditors is bound to have established that fact. The limitations here, according to the cases cited herein, and dealing with similar claims, began when the death occurred, already established by the record giving jurisdiction of the case to the chancery court. Hence no reasonable purpose would be served to require the affidavit uselessly to state that deceased departed this life on a certain date. Death could be the only fact here starting the Statute of Limitations to run against the probated claim, and to require its date to be given in the affidavit would be supererogation, and expand the statute, which we have no authority to do.

A case involving services to decedent was Foster v. Shaffer, 84 Miss. 197, 36 So. 243, 244, where the claim probated was: "Estate of Frank A. Schmidt to T. R. Foster, Attorney. For legal advice and services rendered Frank A. Schmidt, $500.00." We held the probate, on contest, sufficient, although nothing appeared on its face made requisite by the Boggan case. The Court said that the claim was not based on an itemized account, but was: "A notification to the administrator and all concerned that this claim was made against the estate, and furnished an opportunity to have the claim contested" under Section 1932, Code of 1892, now Section 568, Code 1942.

There, it was further said that claimant presented, "as required by law, 'a statement of the claim in writing,' and this was a substantial compliance with the provisions of the section quoted." We therefore reversed the decree of the chancellor holding the opposite view. This case is in harmony with our later holding in Johnson v. Odom, 202 Miss. 213, 31 So. (2d) 120, wherein we held that the services must be so described as to present a prima facie case, when probate is required. Neither case, moreover, referred to limitations in the course of reasoning.

The fact that in the case at bar the claim was, by the scrivener, divided into monthly and yearly periods, could not effect an acceleration of the commencement of the running of the Statute of Limitations, which, under the circumstances here could only start to operate at the date of the death of the decedent. Otherwise, the law would present the strange anomaly of appellant being compelled every three years to sue his insane sister, the services and necessaries still continuing to be furnished her in his home. Such a course would be adhorrent, and would probably end all such assistance from one relative to another in like condition, as the sister here. The policy of the law, well-established in this State, that on these continuous contracts, express or implied, limitations do not start until the death of the debtor is both expedient and enlightened.

We are therefore constrained to overrule the case of Boggan v. Scruggs, on which appellees rely, and which stands alone in this precise field of our jurisprudence, insofar as it deals with the Statute of Limitations, rather than to repudiate the contrary well-established doctrine declared in McCully v. McCully, and the many other decisions in harmony therewith; and because of the holding by this Court in Stephens v. Duckworth, discussed at length above.

The decree of the chancellor disallowing appellant's claim for board, lodging, clothing, medical attention

and nursing, is therefore reversed, and a decree will be entered here allowing same. Since the estate is still in process of administration, and our adjudication may cause its insolvency, or require further administrative orders and decrees not inconsistent with this opinion, we remand the case to the chancery court, except for our decree here, for such further administrative procedure as may be necessary and proper.

Reversed and remanded.

DISSENTING OPINION.

**Roberds, J.**, delivered a dissenting opinion.

I do not think the facts and circumstances established an implied agreement to reimburse appellant for services in caring for Mrs. Shirley and furnishing her support. The circumstances surrounding his removal of her from the State Hospital at Whitfield, and the contents of the instrument executed by him at the time of such removal, negative any such implied agreement. She could have remained and been well cared for in that institution. He was under no legal duty to care for her and took her from the hospital against the advice of the staff of doctors thereof, and he assumed responsibility for her acts and her maintenance and support. He should not be permitted to thereby force the establishment of an implied agreement to pay himself what he claims is fair and reasonable compensation for services and support. What one may expect is not the test. The question is whether there was an implied contract.

Nor do I think we should change the rule announced in Boggan v. Scruggs, 200 Miss. 747, 29 So. (2d) 86, to the effect that the probated claim should show upon its face liability against the estate and that the claim is not barred by the statute of limitations.

I do not dissent to the holding that the statute of limitations has not run against this claim because, and

only because, prior decisions of this Court appear to support that holding and I am bound by such decisions. As an initial proposition, I would not assent that the statute of limitations does not begin to run in such a case until the death of the intestate. Ordinarily, in the absence of express contract to the contrary, payment for services and goods furnished is due when rendered and furnished. The rule announced is too dangerous. Under it one may furnish services and goods for thirty to forty years, without a penny being paid in the meantime and without the beneficiary knowing he or she is supposed to pay therefor, and after the death of such beneficiary collect from the estate what is supposed to be the fair and reasonable value of such services and goods, regardless of the cost fluctuations and price changes during that time of such services and necessaries. Better it would be to require such claimant to have himself appointed guardian and let the chancery court allow to him, from time to time, a fair amount for such services and goods. The Chancellor could and would properly evaluate such amount at the time and under then existing conditions, having in mind the value of the estate of such dependent.

**Smith, C. J.**, delivered a dissenting opinion.

Boggan v. Scruggs, 200 Miss. 747, 29 So. (2d) 86, was correctly decided and should not be overruled provided claims of the character here under consideration should be probated in accordance with the requirements of Section 568, Code 1942. That case simply followed Whitehead v. Puffer, 187 Miss. 193, 192 So. 566, where the many supporting authorities were cited.

This claim is not one for unliquidated damages nor based on a contingent liability, but one which arose ex contractu during the life of the appellant's intestate, though it did not become due, that is payment therefor could not have been coerced, prior to the death of the deceased, nevertheless it is a claim within Section 568,

Code 1942, as this Court expressly held in Old Men's Home, Inc., v. Lee's Estate, 191 Miss. 670, 4 So. (2d) 235. This case, which was decided by the Court in banc, does not expressly overrule Stephens v. Duckworth, 188 Miss. 626, 196 So. 219, decided by a Division of this Court, which is in conflict therewith, but it does by necessary implication, and being a later pronouncement of this Court on the subject should be either followed or overruled.

Among the purposes of the statute requiring claims against the estate of decedent to be probated, "is that the administrator and all other parties concerned may ascertain what debts are claimed to be due by the estate, and act intelligently in determining whether the same are just and should be paid, or whether the same should be contested. The statute also clearly contemplates that, in presenting claims against the estate of a decedent, the evidence or statement of same probated must on its face show a prima facie right in the claimant to recover from the estate the amount claimed, and that it must disclose the nature and amount of the claim with sufficient precision to bar, when paid, an action therefor." Lehman v. Powe, 95 Miss. 446, 49 So. 622, 623, quoted with approval in First Columbus National Bank v. Holesapple-Dillman, 174 Miss. 234, 164 So. 232.

In McCully v. McCully, 175 Miss. 876, 168 So. 608, the Court's attention was not addressed to and did not discuss what should appear on the probated account, but its attention was addressed to and it discussed, in this connection, only when the statute of limitations begins to run on a claim of this character, which it correctly held was at the death of the person whose estate was sought to be held liable therefor. Boggan v. Scruggs, supra, therefore, cannot be held to be in conflict therewith.

The claim here under consideration was probated in this form:

"Statement of account

Three years and ten months board, lodging, clothing, medical attention and nursing at $30.00 per month .................................$1380.00

Tax payments for account on lands in Pike County Miss.:

| | | |
|---|---|---|
| 1939 taxes, Release No. 4404 | $15.43 | |
| 1940-41 taxes, Release No. 4405 | 58.95 | |
| 1942 taxes, Release No. 5052 | 33.59 | |
| 1943 taxes, Release No. 5053 | 28.01 | |
| 1944 taxes, Receipt No. 7810 | 18.70 | |

Total taxes paid ......................... 154.68"

Followed by the statement of credits to be applied thereto. It does not disclose when the rendition of the services began or when it ended, or why the statute of limitations should not apply thereto. The overruling of Boggan v. Scruggs, supra, would not necessarily result in disclosing error in the decree appealed from. In that case the probated claim showed on its face that a portion of it was barred by the statute of limitations. The probated claim here wholly fails to contain any information on that point, for, as just stated, it discloses neither the beginning nor the ending of the services rendered the decedent. The necessity for a probated claim to disclose whether it is barred by limitation will appear when we remember that an administrator is without authority to waive this bar, or to pay a claim so barred. 34 C. J. S., Executors and Administrators, Sec. 382; 7 Miss. Digest, Executors and Administrators, Key No. 213, and authorities there cited. See also authorities thereon hereinbefore cited and in the controlling opinion.

The probate of a claim of this character need not and should not be limited to a mere statement of the items thereof, but should be "a statement of the claim in writing" of such character as would enable "the administrator and all other parties concerned" to "act intelligently in determining whether the same [is] just

and should be paid." Lehman v. Powe, supra; Henderson v. Ilsey, 11 Smedes & M. 9, 19 Miss. 49 Am. Dec. 41; Sanders v. Robertson, 1 Cushm. 389, 23 Miss. 389; Bingaman v. Robertson, 3 Cushm. 501, 25 Miss. 501; Trotter v. Trotter, 40 Miss. 704; Byrd v. Wells, 40 Miss. 711; and Huntington v. Bobbitt's Heirs, 46 Miss. 528.

The decree of the Court below should be affirmed.