Smith *v.* Smith *et al.*

(Division B. April 24, 1939.)

[188 So. 305. No. 33673.]

**O. M. Oates,** of Bay Springs, for appellant.

**Jeff Collins,** of Laurel, for appellant.

Deavours & Hilbun, of Laurel, for appellees.

**McGehee, J.,** delivered the opinion of the court.

This appeal is from a decree upholding the validity of a certain instrument of writing alleged to constitute the last will and testament of William J. Smith, deceased, late of Jones County, who owned approximately 1800 acres of land and certain personal property at the time of his death. The instrument was sufficiently probated in common form upon the affidavits of the two subscribing witnesses; and thereafter a contest was instituted by W. Claude Smith, a son of the deceased, against his two brothers, Torrey and Oscar Smith, his sister, Mrs. Emma Smith Ball, his mother, Mrs. Mollie Smith, and Torrey Smith as executor, on the grounds of alleged testamentary incapacity and undue influence. The record discloses that Mrs. Emma Smith Ball admitted the allegations of the petition by her answer, and that the mother, Mrs. Mollie Smith, declined to take sides as between the contestants and the proponents, but expressed a willingness that the property involved might be divided, after having first withdrawn pleadings filed on her behalf on each side of the issues in controversy.

Upon the trial, there was sufficient testimony to warrant the submission of the issue to the jury as to whether or not the alleged testator possessed sufficient testamentary capacity to execute a valid last will and testament; and this was likewise true on the issue of undue influence. We would not reverse the case on the finding of the jury as to these issues, except for certain errors hereinafter mentioned, even though the great preponderance of the evidence seems to us to establish the contrary.

It also appears that one of the subscribing witnesses, Dr. J. R. Kittrell, the family physician of the deceased, was not aware of the nature of the instrument at the time he subscribed his name thereto, according to his testimony on the trial, the same not having been read by or to the alleged testator at that time; and it was not shown that he was requested by the alleged testator to witness the execution thereof. On the contrary, such

request he said was made either by the attorney, who was one of the subscribing witnesses, or by Torrey Smith, the son to whom more than half of land owned by the testator was devised in the instrument. The attorney testified that he asked Dr. Kittrell to witness the instrument but he did not state as to when or where the request was made; and there was a conflict in the testimony of the attorney and physician as to whether the physician had been advised as to the nature of the instrument that he was called upon to witness.

There was no dispute among the great number of witnesses who testified in the case as to the fact that the alleged testator, a man seventy years of age, suffered a second stroke of paralysis in February, 1936, prior to the alleged execution of the instrument on October 3rd of that year, and that he thereafter remained helpless, physically at least, until the date of his death in November, 1937; that he could not walk; that his speech was greatly impaired because of the fact that his tongue was partially paralyzed; that he could not use his hands even to the extent of being able to make a mark to affix his signature to any writing; that he had to be helped on and off of the bed; and that he was unable to feed himself.

There was also considerable testimony from witnesses, including that of tenants on the place, the ice man (who visited his home every other day), and other disinterested friends and neighbors, to the effect that his words could not be understood without difficulty; that his attempted conversations were incoherent, and that he did not possess sufficient mental capacity to transact any business throughout the entire period in question. But, as heretofore stated, there were other witnesses who, although admitting his physical helplessness in the particulars hereinbefore mentioned, testified that his mind was all right. Dr. Kittrell was unable to attest as to his testamentary capacity on the date of the execution of the instrument for the reason that he said he did not make sufficient observation of him for that purpose at the time.

At the close of the testimony, the contestant asked leave of the court to amend his petition so as to conform to the proof on the question of whether or not the instrument was valid in so far as the proof and attestation of its execution was concerned. Thereupon, the court made it known that the amendment would be allowed, but that the proponents of the alleged will would be given additional time to answer the amendment, which course would have terminated the hearing which had then been in progress for some three or four days, and would have resulted in an additional trial of the issues involved. Also, counsel for the proponents asked that the contestant be taxed with the cost up to that time. Confronted with this situation, the contestant thought it expedient to withdraw his motion to amend, and request a peremptory instruction on the ground that the testimony failed to show that the instrument had been legally executed, and also on the other issues involved. The chancellor was of the opinion that the peremptory instruction should not be granted for the reason that a conflict in the testimony of the attorney and physician had been presented on the question of whether the instrument had been validly executed, and that this would have been a question for the jury even if pleadings had originally raised that issue. We are of the opinion that the requested amendment should have been allowed to conform to the testimony of Dr. Kittrell, and without the allowance of further time to answer the amendment such as would terminate the trial then in progress, and that the motion to assess the contestant with the costs up to that time was not well taken, for the reason that the only two witnesses who were present at the execution of the instrument in question, competent to testify, had already been examined fully as to the facts and circumstances in connection with its alleged execution, and we are unable to see how any good purpose could have been served by the requested delay. The will had been probated in common form before the pleadings were drawn, and the contestant was entitled to assume that in so far as the

execution of the instrument was concerned it had been conducted in due form. Counsel for the contestant offered [Dr. Kittrell as an adverse witness but the court properly held that he was not entitled to do so. He then developed upon his direct examination of him the fact that he had merely subscribed to the instrument and that he had not attested it, according to his testimony, as required under the principles of law announced in the cases of Maxwell v. Lake et al., 127 Miss. 107, 88 So. 326; and Austin v. Patrick, 179 Miss. 718, 176 So. 714; and proponents having failed to then cross-examine him, the contestant was not advised as to what the full extent and purport of his testimony would ultimately be until he was later examined as a witness by the proponents near the end of the trial. Therefore, we think that the amendment should have been allowed and the trial permitted to proceed, and that the issue raised by Dr. Kittrell's testimony should have been submitted to the jury.

There was no testimony that the alleged testator in any manner personally declared to Dr. Kittrell that the instrument was his will at the time of its execution or that he ever requested him to attest it as such. However, since the pleadings did not present this issue, the refusal to grant the peremptory instruction for the contestant was proper since the proponents were entitled to rely upon the prima facie case made by the probate of the instrument in common form. But it is necessary that we reverse and remand the case because of the error in disallowing the amendment without the terms imposed, and because of other errors hereinafter mentioned.

The proof also disclosed that the alleged testator was carried by Torrey and Oscar Smith from his home in the country through the City of Laurel to a schoolhouse about ten miles away where he was met by the attorney and Dr. Kittrell for the execution of the will in question. Torrey and Oscar being incompetent to testify as witnesses, it was shown without dispute by two other persons that he objected to being carried away in the car, when he

was told that they desired to take him out for a ride, until they said to him that they would only go as far as a Mr. Hosey's place if he preferred. The fact that the school-house was selected as the place for executing the instrument was explained by the attorney on the ground that the alleged testator was sensitive about his condition, and that for this reason he was not carried to the office of the attorney. Neither Mrs. Smith, Mrs. Ball, nor the contestant, were advised that the will was to be executed.

All of the business of the testator had been transacted under powers of attorney in favor of the contestant and Torrey Smith during his illness, and by means of other documents executed by mark made by the attorney and witnessed by him and one or the other of the two sons. To establish testamentary capacity during the period in question, the attorney was offered as a witness, and although objections to his testimony were repeatedly sustained by the court and the rule correctly announced to the effect that he was not competent to relate any facts or circumstances about which he was advised in a professional capacity, it appears that one transaction after another, including the circumstances under which the instrument in question was prepared and submitted for approval in advance, were inquired into to the extent that the jury became acquainted with a number of transactions concerning which such testimony was privileged. These inquiries should not have been made in the presence of the jury. The competency of the witness as to each of the transactions to be inquired into should have been ascertained in advance, before they were brought to the knowledge of the jury.

Inquiries were also made into the alleged conduct of the contestant which were calculated to prejudice the jurors against him, and which in our opinion went beyond the proper scope of the investigation into the mental capacity of the deceased.

While the instructions given the jury may have been correct, when considered as a whole, some of them were

calculated to be misleading as tending to indicate that the issue for determination was whether or not the alleged testator was insane. Some of the jurors may have thought him lacking in testamentary capacity and at the same time not insane within the ordinary acceptation of that term.

No error was committed in denying the contestant the right to offer at the.trial an alleged prior last will and testament as the true one. The one being then contested was last in time, and its validity or invalidity must first be determined.

For the reasons hereinbefore stated, the cause must be reversed and remanded for further proceedings in accordance with the views herein expressed.

Reversed and remanded.