In re Estate of Whittington, Dec'd.

May 4, 1953

No. 38742 30 Adv. S. 21 64 So. 2d 580

B. N. Knox, Jr., for appellant.

Edgar J. Stephens, Jr., for appellee.

Lee, J.

This is an appeal by the Executor of the Estate of F. E. Whittington; deceased, from a decree of the Chancery Court of Union County, which awarded to Mrs. Mary Whittington $1,070 for services rendered to the decedent in his lifetime.

Mrs. Whittington is the wife of Fred Whittington, a nephew of the decedent. She and her husband moved into their uncle's home at a time when his wife was critically ill, with a distinct understanding that, for her services as housekeeper, etc., she would receive $25 a week. Full payment was made under this contract until the death of decedent's wife on June 27, 1946. Appellee and her husband continued in the home until July 27, 1948, when, as a result of an argument about religion, the decedent called them "damn fools," and told them, if they did not like what he said, they could leave. They left immediately. After his death on October 13, 1950, she filed her claim for services at the rate of $25 a week for the period June 27, 1946, to July 27, 1948.

According to the evidence for appellee, she and the decedent had an agreement just before the death of decedent's wife, whereby she and her husband were to continue in the home just as they had done under the previous arrangement, except that decedent would not pay her $25 weekly, but he would, at his death, see that she would be well paid for what she had done.

The evidence to establish the contract was adduced from appellee's husband and four other witnesses, and was to this effect: At his death, decedent "would take care of Mary," he would pay her for her work. If she and her husband stayed with him, the home would be theirs. If she and her husband would stay with him, he would see that they were taken care of at his death, and he would leave them a legacy therefor. After appellee and her husband had left, the decedent told one witness that they had "acted a fool" in that he meant to

leave the home to Mary and the baby, and deed them the little farm south of the concrete road, but, as it was, they would get nothing. To another witness he said, after they had left, that he felt like he ought to pay Mary some money.

The evidence for the defense was directed to showing that the decedent paid most of the bills; that he was good to Mary and her husband; he let them use his car; he furnished money for them to make payments on their home; he advanced considerable sums to Mary's husband; he was scrupulously honest; and, if he had owed anything, he would have paid it.

On the contrary, while admitting that the decedent was good to her and let her use his car at times, the appellee's evidence was to the effect that she and her husband paid their share of the living expenses; they repaid the loans which he had advanced as payments on their home; and the sums advanced to Fred were for the purchase of lumber, and were refunded, together with the profits, when the lumber was subsequently sold. The proof failed to show that any gift was made in direct payment of her services.

We deal with the alleged errors wherein appellant contends that the court erred in allowing the bill of complaint to be amended, and in overruling his plea of the statute of limitations; in admitting the testimony of the husband of appellee, and other witnesses, to establish the alleged contract; and that the decree is contrary to the great weight of the evidence.

The probate of the account was at great length. It gave a history of the relations between the appellee and the decedent. While alleging an agreement to pay, it did not allege that the value of the services was agreed upon between the parties. The actual statement thereof was as follows: "For keeping house for F. E. Whittington, doing his personal and household laundry, the cooking, canning, gardening and helping with the milking and feeding from June 29, 1946, to July 27, 1948, a period

of One Hundred Seven Weeks at the rate of $25.00 per week . . . $2,675.00.''

Thereafter, on April 27, 1951, she filed her bill of complaint, setting up the history of the relationship between the parties, and sought recovery on the basis of quantum meruit because the decedent had promised that she would be taken care of for her services, and therein demanded $25 a week for the period of her services. The executor filed his answer, together with a plea of the statute of limitations, Section 729, Code of 1942. Thereupon, appellee amended her bill so as to charge that the promise was that she would be taken care of ''at his death.'' This amendment was allowed by the court.

While the account was actually probated, assuredly this method of presentation was not exclusive. It showed on its face that it was unliquidated. Hence it was a liability rather than a claim within the meaning of the statutes dealing with probated claims. Neither of the parties could determine the amount to which she was entitled, but such determination was for the court. Stephens v. Duckworth, 188 Miss. 626, 196 So. 219; Talbert v. Ellzey, 203 Miss. 612, 35 So. 2d 628. The filing of the independent bill or petition was therefore in order, and its amendment, by permission of the court, was not error. Sections 1304-5, Code of 1942. The law is liberal as to amendments in order that the real issues of the controversy may be presented. Under the allegations of the amended bill and the proof, the benefits of Section 729, supra, did not accrue to the estate, because three years had not elapsed.

The witnesses, who testified for the appellee, were not seeking to establish their own claims against the estate. Their evidence showed that the appellee performed services for the decedent; that he did not consider such services to be gratuitous, but deemed that they should be paid for; and that he expected to pay for them. ''Where the making of an oral contract is disputed, all the acts and declarations of the parties tending to establish

or refute it are admissible, together with all the facts connected with the history of the transaction, and the surrounding circumstances. . . ." 17 C. J. S. 1238, Contracts, Section 593. Hence, the evidence complained about was properly admitted.

Appellee met the burden required of her under Bell v. Oates, 97 Miss. 790, 53 So. 491.

 The learned chancellor was fully warranted in finding that the decedent impliedly promised to pay, at his death, for appellee's services; that the amount was not agreed upon between the parties; that it was the obligation of the estate to pay on the basis of quantum meruit; and that $10 a week was a reasonable value therefor. Hickman v. Slough, 187 Miss. 525, 193 So. 443; Stephens v. Duckworth, supra.

No error was committed by the trial court, and the decree appealed from is affirmed.

Affirmed.

*Roberds, P. J.,* and *Kyle, Ethridge* and *Lotterhos, JJ.,* concur.